UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS DERBY,<br><br>        Plaintiff,<br><br>    v.<br><br>AOL, INC.,<br><br>        Defendant. | Case No.  15-cv-00452-RMW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Before the court is defendant AOL's motion to dismiss the complaint filed by plaintiff Nicholas Derby. Dkt. No. 18. The court held a hearing on the motion on May 29, 2015. For the reasons set forth below, the court GRANTS the motion to dismiss.

## I.   BACKGROUND

This case arise arises out of three unsolicited text messages that plaintiff received through defendant's AOL Instant Messenger ("AIM") service, and a confirmation text from AOL to plaintiff following plaintiff's request to block future messages from AIM. Dkt. No. 1 ¶ 18–20. Defendant AOL, a mobile social networking and internet company, operates an instant messaging system called AIM. *Id*. ¶¶ 6, 14. According to the complaint, sometime in the last several years AOL implemented the ability to send messages from AIM to cellular telephones via Short Message Services ("SMS"), also known as text messaging. *Id*. ¶¶ 11, 14. The system allows AIM users to input a mobile phone number on their computer and send that number a text message

through AIM. *Id*. ¶¶ 14, 16. The system utilizes abbreviated phone numbers known as "short codes" to send the message, so when the recipient receives the text message, they can reply to the short code with a text message of his or her own. *Id*. ¶ 14, 15. AOL receives the response text sent to the short code and forwards it to the AIM user's client on his or her computer. *Id*. ¶ 19, 20.

Plaintiff alleges that on or about June 15, 2014 he received three unsolicited text messages sent through AIM and intended for someone named Sy. *Id*. ¶¶ 18–20. Although the complaint does not so allege, presumably the three texts were the result of the sender inputting an incorrect phone number, which happened to be plaintiff's. The messages listed the short code "265060" in the "from" field, which the complaint alleges is a short code operated by AOL. *Id*. ¶ 19. Plaintiff followed AOL's instructions for blocking the transmission of such AIM text messages in the future by sending a text to the "265060" short code with the message: "block <[Name of AOL user]>."[1] *Id*. ¶ 21. Immediately thereafter plaintiff received a response from AOL stating: "Messages from <[Name of AOL user]> have been blocked. To unblock, reply 'unblock <Username>' or reply 'HELP' for more options." *Id*. ¶ 22. Plaintiff alleges that he never signed up to receive texts through AIM, and did not provide AOL or any of AOL's users with consent to receive text messages. *Id*. ¶ 25.

Plaintiff alleges that AOL's practice of permitting AIM users to send text messages to mobile phone numbers without obtaining the recipients prior express consent violates Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"). *Id*. ¶ 36; *see also* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff proposes to represent a class of persons who received unsolicited text messages, defined as follows:

> All persons in the United States and its Territories whose cellular telephones were sent one or more text messages by AOL's instant messenger system where the called party did not provide express consent to AOL to send such text message.

Dkt. No. 1 ¶ 26. The complaint alleges that AOL's practice of sending text messages through AIM to mobile phones without the recipient's prior express consent violates the privacy rights of the

---

[1] The complaint does not specify the AOL user's name "for privacy consideration." Dkt. No. 1, at 5 n.1.

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS

2

recipients and has caused statutory and actual damages which entitle the members of the proposed class to a minimum of $500.00 in damages for each violation under Section 227(b)(3)(B) of the TCPA. *Id.* ¶ 36.

Plaintiff filed the instant complaint on February 2, 2015. *See* Dkt. No. 1. On April 3, 2015 defendant moved to dismiss the complaint, arguing that the complaint fails to state an actionable claim under TCPA. Dkt. No. 18. Plaintiff filed an opposition on May 8, 2015, *see* Dkt. No. 22, and defendant replied on May 22, 2015, *see* Dkt. No. 23.

## II.   ANALYSIS

Defendant moves to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 18, at 3. Such a motion tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

The TCPA makes it unlawful "to make any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C.

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS

3

§ 227(b) (1)(A)(iii).[2] The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. § 227(a)(1). When Congress enacted the TCPA, it directed the Federal Communications Commission ("FCC") to promulgate regulations implementing the Act's requirements. *Id*. § 227(b)(2). Pursuant to this mandate, the FCC has construed the statutory term "automatic telephone dialing system" beyond systems which use a random or sequential number generator to make telemarketing calls to include systems which have the capacity to "dial stored numbers *without human intervention*." *See* 18 F.C.C.R. 14014, 14091– 93 (2003); 23 F.C.C.R. 559, 566–67 (2008); 27 F.C.C.R. 15391, 15392 n.5 (2012). In particular, the FCC found that predictive dialers fall into the statutory definition of an ATDS because "[t]he basic function of such equipment [is] ... the capacity to dial numbers without human intervention." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14091–93 (July 3, 2003). Accordingly, courts have held that a system need not send messages to completely random numbers, and that an automated system delivering text messages to an uploaded list of hundreds or thousands of predetermined numbers can be considered an ATDS. *See McKenna v. WhisperText*, Case No. 14-0424, 2015 WL 428728 (N.D. Cal. Jan. 30, 2015); *see also Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819–20 (N.D. Ill. 2014).

The three initial texted received by plaintiff involve different issues from the confirmation reply plaintiff received following his opt-out, and the court addresses them separately.

### A.     The Initial Text Messages

AOL's central argument on this motion is that the AIM system at issue in this case is not an ATDS because it requires human intervention to send text messages. Dkt. No. 18, at 5–7. AOL argues that the complaint affirmatively alleges that AIM relies on human intervention to transmit text messages to recipients' cell phones. *Id*. For example, the complaint alleges that in this case,

---

[2] A text message is a "call" under the TCPA. *See Gomez v. Campbell–Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014).

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS

4

"[o]ne of [AOL's] customers . . . prompted" AIM to transmit a text to plaintiff's mobile phone. Dkt. No. 1 ¶ 18. According to the complaint, plaintiff was sent an unsolicited text message when an AIM user "inputted a mobile phone number" and directed the system to send plaintiff a text message, the contents of which were composed by the AIM user. *Id*. ¶¶ 17–20. Furthermore, the complaint describes the AIM system as "designed . . . to rely on . . . mobile phone numbers inputted by its customers." *Id*. ¶ 16.

Plaintiff responds by urging the court to draw a distinction between "conduct that triggers dialing" of a mobile phone number, and "the actual act of dialing" that number. *Id*. at 5. Plaintiff contends that where there is human intervention in the form of some conduct that prompts an automatic system to dial a number, the system qualifies as an ATDS. *Id*. However, plaintiff cites no authority for the distinction "between a human user who requests a call or message be sent on his behalf, and the entity that actually owns, uses, and operates the equipment that dials the phone number without human intervention." Dkt. No. 22, at 1. The cases plaintiff does cite in support of his argument that AIM employs an ATDS are either distinguishable or support dismissal of his claims.

Plaintiff relies heavily on *Sterk v. Path, Inc*., 46 F. Supp. 3d 813 (N.D. Ill. 2014). Dkt. No. 22, at 6–7. *Sterk* involved the following system: Path prompted users of the Path service to upload their contacts upon joining the service, and would add these numbers to a list. *Sterk*, 46 F. Supp. 3d at 818–19. Path would then use automated equipment to make calls from that list. The court found that the equipment used by Path, which made calls from a stored list without human intervention, was comparable to the predictive dialers that the FCC has found to qualify as an ATDS. The court noted that "the uploading of call lists from Path users is essentially the same as when a call list is entered by a telemarketer in a database. It is the ultimate calling from the list by the automated equipment that is the violation of the TCPA." *Id*. at 819. The court rejected Path's argument that a user's decision to upload their contacts constituted human intervention so as to disqualify the system as an ATDS. *Id*.

The court first notes that *Sterk* is an out-of-Circuit case which is in conflict with rulings

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS
5

from this District. *See McKenna*, 2015 WL 428728 (finding a similar system to not qualify as an ATDS because it was the product of human intervention). Furthermore, the court finds that *Sterk* does not support plaintiff's argument that AOL uses an ADTS. Whereas *Sterk* involved the sending of promotional text messages to numbers in a Path database populated by Path users who elected to upload their contact lists to Path, this case involves personalized text messages, composed by individual AIM users, sent to numbers chosen and manually inputted by the users. In *Sterk* the Path system determined which number to call or text (from the user-provided list of numbers), when to call, and what the message would be. Here, the AIM user has control over each of these variables, and the user is simply using AIM to send a text to someone containing a personalized message.

Plaintiff also discusses *Fields v. Mobile Messengers Am., Inc.*, Case No. 12-5160, 2013 WL 677076 (N.D. Cal. Dec. 23, 2013), in support of its argument that no human intervention is required to send the AIM messages at issue in this case. Dkt. No. 22, at 7. Plaintiff argues that *Fields* "made clear [that] it is the actual 'dialing' or 'sending' of text messages from the system itself—regardless of any 'prompting' by the user—that defines an ATDS." *Id*. The court finds *Fields* distinguishable. The court in *Fields* concluded that the system at issue in that case functioned like a predictive dialer. 2013 WL 677076, at *3 ("Like predictive dialers, mBlox's equipment receives numbers from a computer database . . . and then dials those numbers without human intervention.") (internal quotation marks and alterations omitted). Further, the defendant in Fields admitted that there was no human interaction or intervention in sending text messages from the system at issue. *Id*. The court also noted that defendant's "equipment has the capacity to send millions of texts per month and that the temporal manner in which the texts were sent indicates that human agency was not involved." *Id*. Like *Sterk*, *Fields* involved an automated process of sending automatically-generated promotional texts to lists of mobile phone numbers. This stands in clear contrast to the system alleged in the complaint, which sends texts only at the direction of AIM users, and which contain personalized messages composed by such users. The recipient's number does not come from a list, but rather is provided by the AIM user who directs AOL to

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS
6

send the text in the first place. There are no allegations in the complaint that suggest that the AIM system could perform these tasks without human intervention, and the allegations in the complaint demonstrate that had an AIM user not inputted plaintiff's mobile phone number, composed a text message, and directed AIM to send it to plaintiff, he would not have received the text messages at issue.

The court also notes that at least two cases cited by plaintiff contradict plaintiff's position in this case. *See Johnson v. Yahoo!, Inc.*, Case No. 14-2028, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014); *Glauser v. GroupMe, Inc.*, Case No. 11-2584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015). For example, the court in *Johnson v. Yahoo!, Inc.*, unambiguously held that "[w]hen a user sends a personalized message to a contact, it is clear that that transmission involves human intervention." 2014 WL 7005102, at * 5. The system at issue in *Johnson* allowed Yahoo users to send text messages to people in their contact lists by clicking the contact's name and composing a message, and it was these messages that the court found clearly involved human intervention.[3] The court finds that the facts of *Johnson* closely parallel those in this case and support dismissal of Derby's claim.

Other courts have also found human intervention in circumstances involving far less user involvement and far more automation that alleged in the complaint in this case. In *Gragg v. Orange Cab Co.*, the court found that a computerized taxi dispatch system did not qualify as an ATDS. 995 F. Supp. 2d 1189, 1189 (W.D. Wash. 2014). After a passenger requested a taxi with the system, drivers could "accept" the fare and agree to pick up the passenger. Once a driver accepted the fare, the system would compose and transmit a text message to the passenger informing him or her that the driver was on the way. Although the system composed and sent the text automatically, the court held that the system was not an ATDS because the driver's input (pressing "accept") was required before the system could draft and send the message. "The system

---

[3] The *Johnson* court reserved judgment on other messages that were sent automatically by Yahoo at other times, for various purposes such as informing the recipient that their opt-out of the texting system had expired. 2014 WL 7005102, at * 5.

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS
7

is able to dial and transmit the dispatch notification only after the driver has physically pressed 'accept': human intervention is essential." *Id*. at 1194. Similarly, in *Marks v. Crunch San Diego, LLC*, the court held that an SMS platform did not qualify as an ATDS where telephone numbers were uploaded to the texting system only through "human curation and intervention." Case No. 14-348, 2014 WL 5422976, at *3 (S.D. Cal. Oct. 23, 2014).

In sum, the court finds that the allegations of the complaint show that extensive human intervention is required to send text messages through defendant's AIM service.[4] Accordingly, the court concludes that the complaint fails to state a claim for relief under the TCPA because the AIM system does not employ an ATDS, and GRANTS defendant's motion to dismiss as to the three initial text messages sent by defendant's AIM service.

### B. The Later Opt-Out Confirmation Text

In addition to the initial three text messages plaintiff received from AIM, plaintiff's TCPA claim is also based on the confirmation text plaintiff received from AOL after texting AOL instructions to block any further messages like the initial three. Dkt. No. 1 ¶ 22. Unlike the first three, the confirmation text was not composed by an AIM user, and was sent automatically by AOL in response to plaintiff's text requesting that future messages be blocked. Despite these differences, the court concludes that the confirmation text is also not actionable under the TCPA.

Defendant argues in its motion to dismiss that "courts have consistently rejected TCPA claims resting upon similar 'confirmation' text messages following a text by the plaintiff to the defendant requesting the confirmed action." Dkt. No. 18, at 7. Defendant identifies three reasons that the confirmation text should be found not actionable: (1) plaintiff knowingly released his

---

[4] As plaintiff notes in his opposition, several of the cases discussed herein were decided on motions for summary judgment rather than at the pleading stage. Dkt. No. 22, at 11–12. However, Derby's affirmative allegations of the need for human intervention by an AIM user when the sending a text preclude the need for discovery to address whether Derby has alleged the use of an ATDS. *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim ....") (citation omitted); *see also McKenna*, 2015 WL 428728, at *4 n.36 (finding affirmative allegations of human intervention precluded the need for discovery regarding the specifics of the defendant's system).

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS
8

phone number to AOL and thereby consented to be called at that number; (2) the confirmation text relied on human intervention—plaintiff's own text to AOL requesting that future texts be blocked; and (3) imposing liability for consumer-friendly confirmation texts like that at issue here "stretches the TCPA beyond the realm of reason" and is contrary to the public policy goals of the TCPA. Dkt. No. 18, at 8–10. In support of its arguments, defendant cites several cases in which courts dismissed actions where TCPA liability was premised on confirmation texts like that alleged here. *See, e.g.*, *Roberts v. PayPal, Inc.*, Case No. 12-0622, 2013 WL 2384242, at *3 (N.D. Cal. May 30, 2013) *appeal docketed*, No. 13-16304 (9th Cir. 2013); *Friedman v. Massage Envy Franchising*, *LCC*, Case No. 12-2962, 2013 WL 3026641, at *5 (S.D. Cal. June 13, 2013); *Ryabyshchuck v. Citibank (S.D.) N.A.*, Case No. 11-1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012); *Holt v. Redbox Automated Retail, LLC*, Case No. 11-3046 (S.D. Cal. June 20, 2013).

        Plaintiff argues in opposition that where an individual was originally sent an unsolicited text message without providing prior consent, replied to the message with a request to stop or block future messages, and subsequently received a confirmation from the original sender, the confirmation texts violates the TCPA. Dkt. No. 22, at 14–17. This argument derives from the FCC's holding in *In re SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC Declaratory Ruling, CG Docket No. 02-278*, 27 F.C.C.R. 15391 (Nov. 29, 2012) ("*SoundBite*"). However, plaintiff overstates the impact of the FCC's holding. In *SoundBite*, the FCC was asked to clarify whether a person's initial consent to the receipt of text messages also constituted consent to the receipt of a confirmation text following the person's request to opt-out of receiving further messages. 27 F.C.C.R. at 15392. The FCC found that the initial consent encompassed consent to the confirmation text as well, but expressly stated that its *SoundBite* holding was limited to the specific facts of the case before it. *Id*. at 15392–94. In short, the FCC confirmed that in the particular case where a plaintiff has provided initial consent, a defendant may rely on that initial consent as a defense to liability under the TCPA for a confirmation text sent to a plaintiff in response to their opt-out request. However, because the FCC's ruling was limited to that particular

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS
9

set of circumstances, it does not necessarily follow from the FCC ruling that a confirmation text like that alleged in the complaint is actionable where a person is sent unsolicited text messages, texts the sender a request to block such messages in the future, and receives a text confirming the block request. This is reflected in the cases cited by defendant dismissing claims based on confirmation texts like that here.

Plaintiff argues that three of the cases cited by defendant in its motion to dismiss are distinguishable, as they involved circumstances where a confirmation text was sent to a person who had originally consented to text messages and later elected to opt out—that is, circumstances similar to those addressed by the FCC in *SoundBite*. *See Ibey v. Taco Bell Corp.*, Case No. 12-0583, 2012 WL 2401972 (S.D. Cal. June 18, 2012); *Ryabyshchuck*, 2012 WL 5379143; *Emanuel v. Los Angeles Lakers, Inc.*, Case No. 12-9936, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013). However, in *Ibey* and *Ryabyshchuck*, the court did not rely on the plaintiff's initial consent in holding that the TCPA imposes no liability for a single confirmation text. *See Ibey*, 2012 WL 2401972, at *3 ("The Court concludes that the TCPA does not impose liability for a single, confirmatory text message."); *Ryabyshchuck*, 2012 WL 5379143, at *3 ("Such simple, confirmatory response to plaintiff-initiated contact can hardly be termed an invasion of plaintiff's privacy under the TCPA. A finding to the contrary would stretch an inflexible interpretation beyond the realm of reason.") (internal quotation marks and citation omitted). And while the court in *Emanuel v. Los Angeles Lakers* did conclude that by voluntarily providing his mobile number to the defendant, plaintiff consented to the receipt of a confirmation text, the court repeatedly emphasized that the TCPA must be viewed with common sense and in light of the TCPA's animating purpose: prohibiting "intrusive, nuisance telemarketing calls." 2013 WL 1719035, at *3 (internal quotation marks and citation omitted).

Plaintiff argues that the other cases cited by defendant were wrongly decided, and urges the court not to follow their holdings. Dkt. No. 22, at 16–17. For example, plaintiff argues that *Friedman v. Massage Envy Franchising* is factually distinguishable because the confirmation text there was sent in response to plaintiff's two conflicting opt-out messages and sought clarification

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS
10

of plaintiff's intent. 2013 WL 3026641, at *4. Plaintiff also contends that "*Freidman* also failed to fully implement the provisions of the TCPA, instead making a policy decision to carve out an exception which the FCC itself has declined to make." Dkt. No. 22, at 17. The court is not convinced by either argument. The court in *Friedman* declined to impose TCPA liability where plaintiff received a text seeking clarification following his attempt to opt-out, finding that "[o]ne message seeking clarification is not a proliferation of intrusive, nuisance calls that the TCPA sought to prevent." 2013 WL 3026641, at *4. While the factual circumstances that gave rise to the confirmation text here differ from those in *Friedman*, the court's holding in that case was based on the notion that a single message sent in response to plaintiff's text (or texts) is not the kind of intrusive, nuisance call that the TCPA prohibits. The court can see no reason to find that the confirmation text in this case is any different: whether the responsive text seeks clarification of plaintiff's intentions or simply confirms plaintiff's decision to opt-out, it does not constitute the sort of automated and intrusive telemarketing communications the TCPA was enacted to combat.

Finally, the fact that the FCC has not explicitly held that confirmation texts are not actionable in circumstances beyond those in *SoundBite* has not prevented numerous courts from so holding, and the FCC's authority to interpret the TCPA does not relieve federal courts from the duty to interpret and apply the law. The Ninth Circuit recently emphasized that courts must look to the surrounding circumstances in determining whether particular calls "run afoul of the TCPA," and in so doing, courts must "approach the problem with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012); *see also Ryabyshchuck*, 2012 WL 5379143, at *3. The application of common sense requires looking to the purposes of the TCPA, which the Ninth Circuit has defined as protecting consumers from the "nuisance" and "invasion of privacy" that result from "unsolicited, automated" telemarketing calls. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (internal quotation marks and citation omitted). Construing the TCPA to prohibit consumer-friendly confirmation texts like that at issue here would fly in the face of both common sense and the goals of TCPA.

Ultimately, the court finds that the confirmation text at issue here is not actionable.

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS

11

Plaintiff's own text precipitated the confirmation text, and by texting AOL requesting to opt-out of future messages, plaintiff knowingly released his phone number to AOL and thereby consented to be texted back at that number. The court agrees with the holding in *Ibey* that "the TCPA does not impose liability for a single, confirmatory text message." 2012 WL 2401972, at *3; *see also Holt*, Case No. 11-3046, at 6 (same). Common sense dictates that the TCPA, which seeks to combat intrusive, nuisance telemarketing calls, should not be construed to punish the consumer-friendly practice of confirming requests to block future unwanted texts. The court therefore GRANTS defendant's motion to dismiss as to the confirmation text.

## III.  ORDER

For the reasons set forth above, the court GRANTS defendant's motion to dismiss the complaint. Although amendment may be futile, the court grants plaintiff 20 days leave to amend the complaint. Plaintiff must file a first amended complaint no later than June 18, 2015.

**IT IS SO ORDERED.**

Dated: June 1, 2015

*Ronald M. Whyte*
Ronald M. Whyte
United States District Judge

15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS