UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS DERBY,<br><br>    Plaintiff,<br><br>    v.<br><br>AOL, INC.,<br><br>    Defendant. | Case No. 5:15-cv-00452-RMW<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 35 |

Following the court's order granting defendant AOL's motion to dismiss, plaintiff Nicholas Derby filed a First Amended Class Action Complaint alleging violations of the Telephone Consumer Protection Act. Dkt. No. 31 ("FAC"). Before the court is defendant AOL's July 16, 2015 motion to dismiss the FAC. Dkt. No. 35. Plaintiff filed an opposition, Dkt. No. 38, and defendant filed a reply, Dkt. No. 40. The court held a hearing on the motion on September 11, 2015. For the reasons set forth below, the court GRANTS the motion to dismiss.

**I.   BACKGROUND**

This case arise arises out of three unsolicited text messages that plaintiff received through defendant's AOL Instant Messenger ("AIM") service, and a confirmation text from AOL to plaintiff following plaintiff's request to block future messages from AIM. FAC ¶¶ 18–26. Defendant AOL, a mobile and computer social networking and internet company, operates an

instant messaging system called AIM. *Id*. ¶¶ 6, 14. According to the complaint, sometime in the last several years AOL implemented the ability to send messages from AIM to cellular telephones via Short Message Services ("SMS"), also known as text messaging. *Id*. ¶¶ 11, 14. The system allows AIM users to input a mobile phone number on their computer and send that number a text message through AIM. *Id*. ¶¶ 14, 16. The system utilizes abbreviated phone numbers known as "short codes" to send the messages, so when the recipient receives a text message, he or she can reply to the short code with a text message of his or her own. *Id*. ¶¶ 14, 15. AOL receives the response text sent to the short code and forwards it to the AIM user's client on his or her computer or mobile device. *Id*. ¶¶ 18-20.

Plaintiff alleges that on or about June 15, 2014 he received three unsolicited text messages sent through AIM and intended for someone named Sy. *Id*. ¶¶ 18–23. Although the complaint does not so allege, presumably the three texts were the result of the sender inputting an incorrect phone number, which happened to be plaintiff's. The messages listed the short code "265060" in the "from" field, which the complaint alleges is a short code operated by AOL. *Id*. ¶ 20. Plaintiff followed AOL's instructions for blocking the transmission of such AIM text messages in the future by sending a text to the "265060" short code with the message: "block <[Name of AOL user]>."[1] *Id*. ¶ 24. Immediately thereafter plaintiff received a response from AOL stating: "Messages from <[Name of AOL user]> have been blocked. To unblock, reply 'unblock <Username>' or reply 'HELP' for more options." *Id*. ¶ 25. Plaintiff alleges that he never signed up to receive texts through AIM, and did not provide AOL or any of AOL's users with consent to receive text messages. *Id*. ¶ 37. These allegations appeared in plaintiff's initial complaint, Dkt. No. 1, and were repeated with minor modification in the FAC, Dkt. No. 31.

Plaintiff alleges that AOL's practice of permitting AIM users to send text messages to mobile phone numbers without obtaining the recipients' prior express consent violates Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"). FAC ¶ 48; *see also* 47

---

[1] The complaint does not specify the AOL user's name "for privacy consideration." FAC ¶ 24 n.1.

U.S.C. § 227(b)(1)(A)(iii). Plaintiff proposes to represent a class of persons who received unsolicited text messages, defined as follows:

> All persons in the United States and its Territories whose cellular telephones were sent one or more text messages by Defendant's AIM system where the called party did not provide express consent to Defendant to send such text messages.

FAC ¶ 38. Plaintiff alleges that AOL's practice of sending text messages through AIM to mobile phones without the recipients' prior express consent violates the privacy rights of the recipients and has caused statutory and actual damages entitling the members of the proposed class to a minimum of $500.00 in damages for each violation under Section 227(b)(3)(B) of the TCPA. *Id.* ¶ 48.

On July 1, 2015, the court dismissed plaintiff's initial complaint. Dkt. No. 28. The court concluded that the three initial text messages plaintiff received did not violate the TCPA because they were sent via human intervention, not via an "automatic telephone dialing system" required for TCPA liability. *Id.* at 8. The court concluded, moreover, that plaintiff's own request to opt out precipitated the confirmation message and that plaintiff knowingly released his phone number to AOL, thereby consenting to be texted back at that number. *Id.* at 12.

The FAC repeats the allegations about the three messages plaintiff received and the confirmation he received after opting out. FAC ¶¶ 18-26. The FAC also describes two features of AIM not mentioned in the original complaint. First, the FAC alleges that if an AIM user receives a text message from the AIM system, and if the individual who originally sent that message has logged out of AIM, when the AIM user sends a text message back to the original sender, he or she will receive an automated reply stating:

> **AIM**
> **<[Name of AOL user]> is not avail.**
> **1 login <sn> <pass>**
> **2 status <msg>**
> **3send <sn> <msg> h help**

*Id.* ¶ 29. Second, the FAC alleges that AIM users may receive status update notifications such as:

> **AIM: <Name of AOL user> signed off of AIM.**
> and,

3
5:15-cv-00452-RMW
ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT

**AIM: Your status has been changed to Online.**

*Id.* ¶ 33.

Defendant moves to dismiss the FAC for failure to state a claim on which relief can be granted because these newly described features, like those described in the original complaint, require human intervention, precluding a claim under the TCPA. Dkt. No. 35 at 2-3. Moreover, defendant moves to dismiss for lack of standing because the auto-reply and status update messages are sent to AIM "users," a group from which plaintiff has excluded himself and thus cannot represent. *Id.* at 3 (citing FAC ¶ 37.) Plaintiff opposes, arguing that as long as a system has the potential capacity to dial numbers without human intervention, messages received from that system violate the TCPA. Dkt. No. 38 at 1.

## II.   ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering whether the complaint is sufficient, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

As described in the court's previous order, the TCPA makes it unlawful "to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).[2] The TCPA defines an "automatic telephone dialing system" ("ATDS" or "autodialer") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such

---

[2] A text message is a "call" under the TCPA. *See Gomez v. Campbell–Ewald Co.*, 768 F.3d 871, 874 (9th Cir. 2014).

numbers." *Id.* § 227(a)(1). Pursuant to 47 U.S.C. § 227(b)(2), the FCC has construed the statutory term "automatic telephone dialing system" beyond systems which use a random or sequential number generator to make telemarketing calls to include systems which have the capacity to "dial stored numbers *without human intervention.*" *See* 18 F.C.C.R. 14014, 14091– 93 (2003); 23 F.C.C.R. 559, 566–67 (2008); 27 F.C.C.R. 15391, 15392 n.5 (2012).

The FCC very recently reiterated this qualification: "the Commission has also long held that the basic functions of an autodialer are to 'dial numbers without human intervention,' and to 'dial thousands of numbers in a short period of time.'" *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72, 30 F.C.C.R. 7961, ¶ 17 (July 10, 2015) ("2015 TCPA Order"), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. Plaintiff argues that the 2015 TCPA Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually . . . using those functionalities to place calls" at the time. Dkt. No. 38 at 9 (quoting 2015 TCPA Order at 15 n.70).

This order will address plaintiff's new factual allegations as well as plaintiff's argument that the FCC's 2015 TCPA Order supports plaintiff's argument that AIM violates the TCPA.

### A.    Plaintiff's New Factual Allegations

The only new features of AIM described in the FAC are that the system (1) sends auto-replies to users who try to send messages to other users who have logged off and (2) the system sends status messages when users sign off or otherwise change their status. FAC ¶¶ 29, 33.

At the outset, the court notes that plaintiff does not allege that he personally received any auto-replies for logged off users or status update messages from AIM. In a class action, "[s]tanding requires that (1) the plaintiff suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) (quotations omitted). "Standing exists if at least one named plaintiff meets the requirements." *Id.* As Derby is the only named plaintiff, the FAC does not allege that any named plaintiff has received auto-

replies for logged off users or status update messages from AIM.[3] The court agrees with defendant that plaintiff lacks standing to pursue a TCPA claim based on AOL sending messages that plaintiff did not personally receive.

Even if plaintiff did have standing to assert a TCPA violation on behalf of users who received auto-replies for users who had logged off or status update messages, defendant argues that auto-replies and status update messages are sent only due to "human intervention" and thus do not indicate the operation of an ATDS. Dkt. No. 35 at 8-9. Defendant further argues that anyone who replies to an AIM message releases his phone number and thereby consents to receive future messages from AIM at that number. *Id.* at 9 n.4. The court agrees.

The auto-reply scenario requires three instances of human intervention: (1) an individual must receive a text message from another AIM user; (2) the sender must have "logged out" of AIM; and (3) the recipient must attempt to "send[] a text message back" to the sender. FAC ¶ 29. In the status update scenario, AIM sends updates only after a user acts by changing his or her status. *See id.* ¶¶ 32-33. Moreover, plaintiff's allegations only relate to *users* of AIM, and the FAC does not allege that users do not consent to receiving messages via AIM. *See* FAC ¶ 29 (noting that auto-reply is triggered "when the recipient sends a text message back to Defendant's AIM system"), ¶ 33 (indicating that status text messages are sent to "users of the system"). Thus, even if Derby or another plaintiff had received an auto-reply or status update, they would have consented to it, precluding any violation of the TCPA. Accordingly, the court finds that plaintiff has failed to state a claim under the TCPA based on his new factual allegations, and any amendment to add another named plaintiff would be futile.

### B.   The FCC's 2015 TCPA Order

This court's prior order dismissed plaintiff's claims relating to the only other harms alleged

---

[3] Indeed, plaintiff concedes that he "is not claiming that he is seeking to represent individuals who received such text messages, or that he has standing to raise these text messages as independent violations of the TCPA that he has suffered." Dkt. No. 38 at 8. Rather, he argues that these messages are "evidence that the text messages Plaintiff did receive . . . were sent by a system that has the capacity to send such messages without human intervention." *Id.* at 2.

in the FAC, namely, the three misdirected messages for "Sy" that plaintiff received and the confirmation message plaintiff received after opting out of receiving further communications. Dkt. No. 28. Because the FAC states no new factual allegations regarding these messages, the only question is whether plaintiff's remaining arguments require the court to revisit its prior ruling.

Plaintiff argues that the court's July 1, 2015 order "did not address Plaintiff's argument that . . . confirmation messages are evidence of the AIM system's *capacity* to dial numbers without human intervention." Dkt. No. 38 at 1. Plaintiff argues, moreover, that in its 2015 TCPA Order, the FCC clarified that "any determination of whether a system is an ATDS should not be based only on the system's *present* capacity, but rather on its *potential* capacity to function as an ATDS even if the system requires some modifications or 'the addition of software' to actually do so." *Id.* (citing 2015 TCPA Order ¶¶ 14-22).

Plaintiff's argument misses the mark. The portions of the 2015 TCPA Order plaintiff cites merely indicate that a system requiring modification may fall within the scope of the TCPA. For example, the Order states:

> By finding that, even when the equipment presently lacked the necessary software, it nevertheless had the requisite capacity to be an autodialer, the Commission implicitly rejected any "present use" or "current capacity" test. In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities.

2015 TCPA Order ¶ 16. The FCC's order does not suggest that a system that never operates without human intervention constitutes an ATDS under the statute. To the contrary, the 2015 TCPA Order reiterates that "the basic functions of an autodialer are to 'dial numbers *without human intervention*,' and to 'dial thousands of numbers in a short period of time.'" *Id.* ¶ 17 (emphasis added). *Accord Luna v. Shac, LLC*, No. 14-cv-00607-HRL, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) (granting summary judgment for defendant on TCPA claim because subject text messages were sent due to human intervention).

The facts alleged in the FAC do not show that the AIM system has the capacity to operate without human intervention and without user consent. As explained above and in this court's prior

order, each of the factual scenarios alleged in the FAC—sending messages to the wrong recipient, confirming someone's request to opt out, sending an automatic reply for a user who has logged off, and sending a user status update—are triggered by some form of human action.

Plaintiff also argues that the 2015 TCPA Order renders the cases cited in support of this court's prior dismissal order inapposite. Dkt. No. 38 at 10-12. The court disagrees. As explained above, the 2015 TCPA Order does not eliminate the requirement that an autodialer under the TCPA operate without human intervention.

Aside from the issue of "capacity," plaintiff argues that the court should revisit its prior dismissal order because the FCC's 2015 TCPA Order clarified that *express* consent is required to shield an ATDS from liability for sending a reply to an opt-out request. Dkt. No. 38 at 16 (citing 2015 TCPA Order ¶ 106). Plaintiff acknowledges paragraph 52 of the 2015 TCPA Order, which states that consent is demonstrated by providing one's telephone number:

> For non-telemarketing and non-advertising calls, express consent can be demonstrated by the called party giving prior express oral or written consent or, in the absence of instructions to the contrary, by giving his or her wireless number to the person initiating the autodialed or prerecorded call.

Plaintiff argues that the only time he provided his phone number to AOL was as part of a request to opt out—an "instruction" evidencing a lack of consent. Dkt. No. 38 at 16.

Properly read, however, the 2015 TCPA Order does not suggest that confirming plaintiff's opt-out request violated the TCPA. The FCC noted that the law should be read to "fulfill[] Congress's intent that the TCPA not prohibit normal business communications" and that "providing one's phone number evidences prior express consent to be called at that number, absent instructions to the contrary." 2015 TCPA Order ¶ 76. A confirmation message is not the type of harm—"the nuisance, invasion of privacy, cost, and inconvenience" of autodialed calls— that the TCPA was intended to address.[4] *Id.* ¶ 29. Plaintiff cites *Reardon v. Uber Techs., Inc.* in support of his argument that this court should follow the FCC's interpretations of the TCPA, but

---

[4] Defendant also points out that plaintiff actually only instructed AOL to block text messages from a particular user, not all confirmation messages from AOL. Dkt. No 40 at 9.

that case actually held that providing one's phone number, in certain circumstances, constitutes consent to be contacted. *Reardon v. Uber Techs., Inc.*, No. 14-05678-JST, 2015 WL 4451209, at *7 (N.D. Cal. July 19, 2015) ("any plaintiff who provided her phone number as part of the Uber application process consented to receive Uber's texts about becoming an Uber driver").

Plaintiff's characterization of AIM as an "internet-to-phone text message service," Dkt. No. 38 at 12-13, does not change the court's conclusion that plaintiff has failed to state a claim. Plaintiff quotes paragraph 108 of the 2015 TCPA Order for the proposition that "[i]nternet-to-phone text messages, including those sent using an interconnected text provider, require consumer consent." As defendant points out, such a system "involves 'messages [that] originate as electronic mail (e-mail) sent to a combination of the recipient's unique telephone number and [the] wireless provider's domain name.'" Dkt. No. 40 at 5 (quoting 2015 TCPA Order ¶ 108 n.369). The FAC does not allege that AIM operates in this manner. In any event, even if the FAC had alleged that AIM has the characteristics of an internet-to-phone text message service, the only messages plaintiff allegedly received that would not have been subject to some kind of consent were the initial three messages intended for "Sy." As this court previously found, "had an AIM user not inputted plaintiff's mobile phone number, composed a text message, and directed AIM to send it to plaintiff, he would not have received the text messages at issue." Dkt. No. 28 at 7.

In summary, the 2015 TCPA Order does not support plaintiff's argument that the FAC adequately states a claim on which relief can be granted, and the arguments plaintiff raises in opposition to dismissal are unpersuasive.

## III. ORDER

For the reasons set forth above, the court GRANTS WITH PREJUDICE defendant's motion to dismiss the first amended complaint. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 11, 2015

*Ronald M. Whyte*
Ronald M. Whyte
United States District Judge